## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**ANDREW JOHNSON, <u>et al.</u>,**

Plaintiffs,

v.

**DISTRICT OF COLUMBIA,**

Defendant.

Case No. 1:12-cv-00381 (CRC)

---

## <u>MEMORANDUM OPINION</u>

Dr. Andrew Johnson and Dr. Oscar Harp worked for many years as psychologists with the District of Columbia Public Schools ("DCPS").  After both were terminated for receiving poor performance ratings under DCPS's new IMPACT staff evaluation system, they sued, claiming they were actually fired because of their age.  The District of Columbia now moves for summary judgment.  Although DCPS's rollout of the IMPACT system apparently left much to be desired, neither Johnson nor Harp has produced evidence to support an inference that he was fired because of his age.  The Court will therefore grant summary judgment in favor of the District.

**I.      Background**

**A.      <u>The IMPACT Program</u>**

Beginning with the 2009–2010 school year, the District of Columbia Public Schools implemented the IMPACT program, a new system to evaluate teachers and support personnel, including school psychologists.  Def. Statement of Facts (Johnson) ("DSOF") ¶ 6.  Under IMPACT, school psychologists are evaluated bi-annually using four criteria: (1) **standards**—which broadly measures the services psychologists provide; (2) **quality**—which analyzes the Individual Education Plans psychologists prepare for students; (3) **professionalism**—which reviews attendance records

and workplace demeanor; and (4) **timeliness**—which assesses whether psychologists submit student assessments on time.  Def. (Johnson) Ex. 4 at DC000037–56.

The scores for both bi-annual reviews are converted into a final numerical score, which translates to an IMPACT rating of "Highly Effective," "Effective," "Minimally Effective," or "Ineffective" for a given school year.  DSOF ¶¶ 10–11.  Personnel who receive a rating of "Ineffective" for a single year or "Minimally Effective" for two consecutive years are subject to termination.  Id. ¶ 12.  The standards, quality, and professionalism criteria are evaluated by a psychologist's program manager or a DCPS special education coordinator, while other DCPS personnel separately calculate the timeliness score.  Pl. (Johnson) Ex. 33 at 234:21–236:3.  Psychologists receive the highest timeliness score, a four, by completing 100 percent of their student assessments on time; they receive the lowest score, a one, if fewer than 90 percent are timely.  Def. (Johnson) Ex. 4 at DC000084–85.  DCPS averages the standards, quality, and timeliness components to arrive at a combined score, which is then reduced by a small amount if the professionalism rating is less than perfect.  Id. at DC000051.

Despite DCPS's lofty aims, the IMPACT rollout did not go according to plan.  DCPS did not include psychologists' quality and timeliness scores in the 2009–2010 school year rating, and again omitted the quality score for the 2010–2011 school year, due to "challenges with the data."  Pl. (Johnson) Ex. 18 at 38:13–39:04.  For the 2010–2011 timeliness score, DCPS only counted assessments of students whom special education coordinators assigned to psychologists through an online database, although coordinators sometimes assigned students by other means.  Pl. (Johnson) Ex. 42 at 78:3–18.  Additionally, in the middle of the 2009–2010 school year, DCPS issued clarifications to the evaluation methodology, which arguably modified performance expectations for school psychologists, even for work they had already performed.  Id. Ex. 32.  Despite these

problems, DCPS ultimately terminated 165 employees, including 12 psychologists, who received "Ineffective" IMPACT ratings for the 2009–2010 School year.  Compl. ¶ 8.

      B.    <u>Dr. Andrew Johnson</u>

Andrew Johnson worked as a DCPS school psychologist from 1994 until his termination in 2011.  DSOF ¶ 2.  Johnson had generally received positive performance reviews during his career, but his reviews dropped when DCPS implemented the IMPACT program.  Pl. (Johnson) Ex. 14.  Under IMPACT, Johnson's final combined standards and professionalism scores resulted in a "Minimally Effective" rating for the 2009–2010 school year, based on the scores provided by his program manager, Dr. Jamila Mitchell.  DSOF ¶¶ 16–21.  Johnson's standards scores improved somewhat in 2010–2011, but he received a timeliness score of one, resulting in another "Minimally Effective" rating.  <u>Id.</u> ¶¶ 22–27.  DCPS considered only three reports in calculating Johnson's 2010–2011 timeliness score because Johnson's Special Education Coordinator assigned the bulk of Johnson's students outside of the online database.  Pl. (Johnson) Ex. 20 at 157:12–157:18.  Because Johnson submitted one of these three assessments late—for a student with the initials "J.F."—he fell well under the 90 percent timeliness threshold required to receive better than the lowest possible score.  Pl. (Johnson) Ex. 30 at 3–4.  When Johnson learned that DCPS included J.F.'s assessment in his final IMPACT evaluation, he informed an IMPACT administrator that he had been unable to meet with J.F. because the student was not assigned to either of Johnson's schools.  Pl. (Johnson) Ex. 48.  Johnson also spoke with Dr. Mitchell, who explained that Mitchell had conveyed his concerns to the DCPS official who calculated his timeliness score but that she, as a supervisor, could not be involved in the process.  Pl. (Johnson) Ex. 35 at AJOHNSON-000000953.  Johnson also raised concerns about his overall IMPACT score with Dr. Mitchell at his year-end review on June 7, 2011.  Pl. (Johnson) Ex. 16 at 74:15–75:02.  According to Johnson, Dr. Mitchell "giggled" and responded by saying "well, you can retire."  <u>Id.</u>

DCPS terminated Johnson on August 12, 2011 based on his two consecutive "Minimally Effective" ratings.  Def. (Johnson) Ex. 12 at DC000262.  Johnson filed an appeal with the Chancellor's Impartial Review Board challenging his IMPACT score, which was denied.  Pl. (Johnson) Ex. 70.  This suit followed.

        C.      <u>Dr. Oscar Harp</u>

Dr. Oscar Harp was employed by DCPS from 1980 to 2010, first as a clinical psychologist and then as a school psychologist.  Def. (Harp) Ex. 1, Pl.'s Resp. to Def. Interrog. 3.  Dr. Maria Turner-Wingate supervised Harp for most of the 2009–2010 school year and administered his first IMPACT evaluation.  Pl. (Harp) Ex. 2 at 8–9.  Harp received a very low standards score in the evaluation because the sample assessment reports that Turner-Wingate reviewed lacked necessary information and were improperly formatted.  Def. (Harp) Ex. 4 at DC001710–12.  Turner-Wingate also gave Harp a low professionalism score, noting that he routinely failed to follow DCPS policies by not "complying with the schedule of days per school assignment, furnishing his schools with a copy of his building schedule and monthly meetings, [or] following the eligibility guidelines."  <u>Id.</u> at DC001715–16.  Near the end of the school year, DCPS assigned Dr. Ramona Rich to supervise Harp, and she provided his second IMPACT evaluation.  Pl. (Harp) Ex. 2 at 10–11.  Harp received a much improved professionalism score in this evaluation, but his standards score remained low. Rich explained that Harp had been applying incorrect evaluation methods to students referred for counseling, and that he was not including required information in his reports.  Def. (Harp) Ex. 5 at DC001723–25.  Harp's combined scores for the 2009–2010 school year resulted in a rating of "Ineffective," leading to his termination in July 2010.  Def. (Harp) Ex. 7.

Harp challenged his termination through DCPS's Office of Employee Appeals.  Pl. (Harp) Ex. 2.  An Administrative Judge found that DCPS had committed several procedural violations in administering Harp's reviews:  (1) it had failed to provide adequate guidance by changing the

IMPACT rubric half-way through the 2009–2010 school year; (2) it failed to score Harp under all four of the IMPACT criteria; and (3) Rich had evaluated Harp within 90 days of becoming his supervisor, in violation of D.C. municipal regulations. Id. at 19–21. As a result of these violations, the Administrative Judge found that DCPS terminated Harp without just cause and ordered him reinstated with full back pay. Id. at 21–22. The Administrative Judge's order is stayed pending appeal. Harp filed this suit on March 12, 2012.

## II.     Standard of Review

Summary judgment is warranted if the moving party shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court draws all reasonable inferences in favor of the nonmoving party, accepts all competent evidence presented by the plaintiff as true, and does not resolve credibility determinations or weigh the evidence. Id. at 249. Conclusory assertions without factual support to do not create a genuine issue for trial. Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp., 564 F.3d 462, 465–66 (D.C. Cir. 2009).

The Age Discrimination in Employment Act ("ADEA") makes it unlawful to discharge an employee because of his or her age. 29 U.S.C. § 623(a)(1). ADEA claims are reviewed under the familiar burden-shifting framework of McDonnell Douglas. Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)). First, the plaintiff must establish a *prima facie* case of age discrimination; if successful, the burden shifts to the employer to present a legitimate, non-discriminatory reason for the termination; the burden then returns to the plaintiff to produce sufficient evidence for a jury to infer that the

employer's stated reason is pretext for unlawful age discrimination.  Paquin v. Federal Nat. Mortg. Ass'n, 119 F.3d 23, 27 (D.C. Cir. 1997).

### III.   Analysis

The District of Columbia has moved for summary judgment on both Dr. Johnson's and Dr. Harp's claims, contending that their IMPACT ratings were appropriate based on their performance. Both plaintiffs rejoin that the IMPACT process was used as a pretext to fire them because of their age.  Johnson maintains that the overall process was error-riddled and subjective; that he received a clearly erroneous timeliness score; that his supervisor's comments reflect her age bias; and that DCPS has offered shifting statements regarding whether he was replaced by a younger person. Harp similarly asserts that IMPACT is a poor evaluation system and that his supervisors failed to correct obvious errors they committed in scoring his reports.  The Court will address each of the parties' arguments in turn.

### A.   Dr. Andrew Johnson

In its motion for summary judgment, DCPS initially disputed whether Johnson has established that he was disadvantaged in favor of a younger person, a requirement for a *prima facie* case of age discrimination.  E.g., Paquin, 119 F.3d at 27.  Emails between Mitchell and DCPS officials, however, suggest that she selected a 33-year-old psychologist to replace Johnson.  Pl. Ex. 66 at DC003353–54.  And this individual was given Johnson's employee ID number.  Pl. Ex. 67 at DC001643-45.  Johnson has thus met his burden to produce evidence establishing a *prima facie* case.  Accordingly, the only remaining issues are whether DCPS has articulated a legitimate, non-discriminatory reason for terminating Johnson and, if so, whether Johnson has offered sufficient evidence of pretext to rebut that rationale.

The District of Columbia explains it fired Johnson because of his two "Minimally Effective" ratings for the 2009-2010 and 2010-2011 school years, which are grounds for termination under the

IMPACT standards.  Def. (Johnson) Ex. 4 at DC000055–57.  Failure to meet the standard of work required by an employer is undoubtedly a facially legitimate basis for terminating an employee.  E.g., Chowdhury v. Schafer, 587 F. Supp. 2d 257, 264 (D.D.C. 2008); Bennett v. Solis, 729 F. Supp. 2d 54, 57 (D.D.C. 2010).  Indeed, Dr. Johnson does not dispute that DCPS met its burden.  The ultimate question, then, is whether Johnson has presented evidence showing that DCPS's reliance on his poor IMPACT rating was pretext for unlawful discrimination.

Given that the government has provided a legitimate basis for termination, Johnson "must show that a reasonable jury could conclude . . . that the adverse employment decision was made for a discriminatory reason" through evidence "attack[ing] the employer's proffered explanation" or "independent evidence of discriminatory statements or attitudes."  Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006) (quotations and citations omitted).  Johnson contends that DCPS rated him "Minimally Effective" as a pretext to mask its true intent to terminate him because of his age.  He maintains that DCPS and his supervisor, Dr. Mitchell, misused the IMPACT program in arriving at his ratings; that Dr. Mitchell's comments evidence her discriminatory attitude towards Johnson; and that DCPS has offered inconsistent rationales for firing him.  The Court addresses each of these contentions below.

### 1.   Procedural Violations

Johnson alleges that DCPS incorrectly calculated his timeliness score using incomplete information; prevented him from completing work on time; used "vague" and "subjective" criteria to evaluate him and other DPCS employees; and ignored his efforts to bring these issues to DCPS's attention.  According to Johnson, DCPS's failure to properly rate him under IMPACT undermines its reliance on his IMPACT ratings and suggests that his poor year-end reviews were not the real reason he was fired.

An employer's failure to follow its own procedures in terminating an employee may be probative evidence of pretext. <u>Johnson v. Lehman</u>, 679 F.2d 918, 922 (D.C. Cir. 1982). The Court, however, does not "serve as a 'super-personnel department that reexamines an entity's business decisions.'" <u>Holcomb</u>, 433 F.3d at 897 (quoting <u>Barbour v. Browner</u>, 181 F.3d 1342, 1346 (D.C. Cir. 1999)). A procedurally flawed decision to terminate an employee is not evidence of pretext if "the employer honestly believes in the reasons it offers." <u>Fischbach v. D.C. Dep't of Corr.</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996). Instead, the procedural defect must evidence the employer's discriminatory bias. <u>See</u> <u>Washington v. Chao</u>, 577 F. Supp. 2d 27, 46 (D.D.C. 2008) ("procedural irregularities do not raise an inference of racial discrimination unless there is a connection to the discrimination that the plaintiff is claiming" (citing <u>Adeyemi v. District of Columbia</u>, 525 F.3d 1222, 1228 (D.C. Cir. 2008)).

Several of the procedural defects Johnson alleges simply indicate general flaws in IMPACT's design and implementation. Specifically, he alleges that Special Education Coordinators routinely failed to assign student assessments through the required online database; that DCPS made a mid-year adjustment to the IMPACT standards for all employees; and that the IMPACT criteria were vague. But he does not allege that these issues uniquely harmed him as compared to other employees. Flaws in a rating system are not evidence of an employer's intent to discriminate unless the employee can demonstrate that the employer used the rating system as a pretext, not merely that the employer rated the employee incorrectly. <u>Fischbach</u>, 86 F.3d at 1183 ("Once the employer has articulated a non-discriminatory explanation for its action . . . the issue is not 'the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.'" <u>Id.</u> (quoting <u>McCoy v. WGN Continental Broadcasting Co.</u>, 957 F.2d 368, 373 (7th Cir. 1992)). While IMPACT may have been poorly implemented, that does not indicate that DCPS singled out Johnson for negative treatment because of his age. Johnson himself

8

estimates that DCPS fired 165 people within a year after the IMPACT system began.  Compl. ¶ 8.

He does not allege, or provide evidence of, any general policy or plan by DCPS to implement

IMPACT so as to discriminate against employees on the basis of age.  Nor does he offer any

evidence to suggest that IMPACT caused DCPS to terminate older employees in greater numbers

than younger employees.  Absent any such evidence, the alleged procedural flaws do not

demonstrate pretext.

Johnson also argues that the IMPACT criteria were unduly subjective.  Although "courts

traditionally treat explanations that rely heavily on subjective considerations with caution," a

limited degree of subjectivity does not demonstrate pretext, especially where "the employer has

other, well-founded reasons for the employment decision."  Aka v. Wash. Hosp. Ctr., 156 F.3d

1284, 1298 (D.C. Cir. 1998) (*en banc*).  The IMPACT standards established a set of criteria for

supervisors to apply, such as how often a psychologist "administers, scores, and describes the

results of all assessments in an accurate manner."  Def. (Johnson) Ex. 4 at DC000074.  The fact that

supervisors were given discretion to determine whether psychologists "sometimes" or

"consistently" performed the required task does not, by itself, render DCPS's reliance on the

IMPACT process pretextual.  See Bennett, 729 F. Supp. 2d at 65 (evaluation based on whether the

work was "acceptable" to a supervisor, based on otherwise objective criteria, was not significant

discretion demonstrating pretext).  Further, Johnson does not point to any specific errors in Dr.

Mitchell's ratings.  And while Johnson claims that Dr. Mitchell should have taken into account that

he lacked an isolated space to meet with students at one of his schools for a portion of the year, he

presents no evidence that Dr. Mitchell failed to consider this issue in her evaluation, Pl. Ex. 57, nor

does he describe what change should have been made to his evaluation as a result.

Johnson's most compelling evidence regards his timeliness score.  He contends that DCPS

improperly used only three of his student assessments to calculate his 2010–2011 score and that one

of these three—his assessment for J.F.—should not have been considered. Had J.F.'s score been disregarded, Johnson contends he would have received the highest timeliness score and would not have been fired. To demonstrate pretext based on procedural error, however, Johnson must identify some policy or procedure that DCPS violated, or at least some practice that it deviated from, by using only three assessments and considering J.F.'s score. See Hodge v. United Airlines, 821 F. Supp. 2d 180, 194–95 (D.D.C. 2011) (plaintiff must prove "company policy or any other evidence that suggests [the alleged procedural violation] was improper"). He has not done so. IMPACT calls for DCPS to review only those assessments contained on its online database. Unfortunately for Johnson, only three of his assessments were placed online. Pl. (Johnson) Ex. 20 at 157:12–157:18; Ex. 35 at 955. That might be unfair, but it does not show that DCPS deviated from its policies and regulations in assessing Johnson's timeliness score.

Rather than identify any policies or procedures that DCPS violated, Johnson only presents evidence of why DCPS should have deviated from its proscribed practice in his case. Specifically, he provides an acknowledgment by Dr. Mitchell that "it would make sense . . . not to consider [a] particular report" if a psychologist documents problems meeting with a student. Pl. (Johnson) Ex. 33 at 214:2–22. But Dr. Mitchell does not state that DCPS has disregarded assessments under similar circumstances; she appears to simply voice her personal opinion. And Dr. Mitchell had little ability to affect Johnson's timeliness score even if she shared his concerns: DCPS administrators calculated Johnson's timeliness score, and Dr. Mitchell, as Johnson's supervisor, was excluded from this process. Id. at 234:21–236:3. Although Johnson asserts that Dr. Mitchell did not act to correct the errors of others, there is no evidence that she was obligated to do so or she would have been able to modify his IMPACT score had she attempted to intervene.

More fundamentally, Johnson does not connect the alleged errors in calculating his timeliness score to any age bias. He simply asks the Court, and a potential jury, to assume that

unidentified DCPS administrators purposefully calculated his timeliness score incorrectly so that DCPS could fire him based on his age.  This is too speculative an argument to survive summary judgment.

Next, Johnson contends that DCPS decided to terminate him before it calculated his timeliness score.  He points to an email chain where Dr. Mitchell states that "Andrew Johnson will receive a separation letter.  However, there was no AT score calculated for him."  Pl. (Johnson) Ex. 51 at DC003453.  Johnson reads too much into this email.  Again, Dr. Mitchell was not involved in calculating Johnson's score.  Further, another DCPS employee responded by confirming that Johnson was in fact scored.  Id. ("Jamila, I remember him having a [timeliness] score.  Please follow up with Kate on this.").  This email chain thus establishes nothing more than innocuous confusion between DCPS employees as to the timing of his evaluation.  See Fischbach, 86 F.3d at 1183.

Finally Johnson claims that DCPS did not allow him 45 days to complete his assessment of J.F., as DCPS policy required.  He provides a page from his online caseload database that lists the "Caseload Date" for J.F. as September 7th, 2010, which is too early for the 45 day period to have run given that the school year began in late August.  Def. Ex. 37 at 3.  It is far from clear, however, that the "Caseload Date" listed on the database is the deadline to complete the report, as opposed to the date the case was opened or the date on which the 45-day period began to run.  Regardless, this sort of isolated procedural error does not indicate that DCPS did not "honestly believe[d] in the reasons it offer[ed]."  Fischbach, 86 F.3d at 1183.  The Court therefore finds that Johnson has not established procedural violations sufficient to suggest that his IMPACT rating was used as a pretext for age discrimination.

2.      Comments by Dr. Mitchell

Johnson next argues that certain comments by Dr. Mitchell demonstrate her discriminatory intent.  When Johnson voiced concern about his low IMPACT scores to Dr. Mitchell during his 2011 year-end conference, Mitchell allegedly responded "[w]ell, you can retire."  Pl. (Johnson) Ex. 16 at 74:20–75:2.  During this same meeting, Mitchell allegedly assured Johnson that if he wrote her a letter everything "should be all right," only to claim, when Johnson followed through, that there was nothing she could do.  Id. at 75:8–12.  Johnson also provides an email from Dr. Mitchell saying that she "love[d]" that Johnson had appended "[t]erminated DCPS School Psychologist" to his email signature block.  Pl. (Johnson) Ex. 63.

Derogatory comments regarding an employee's age provide direct evidence of age discrimination if there is "a nexus between the remark and the adverse employment decision." Beeck v. Fed. Exp. Corp., 81 F. Supp. 2d 48, 54 (D.D.C. 2000).  None of the statements here, however, provide the required nexus.  Dr. Mitchell's statement that Johnson "can retire" cannot fairly be considered derogatory.  Id. at 53 ("[T]he mere suggestion that plaintiff consider retiring cannot be considered derogatory."); see also Perry v. Shinseki, 783 F. Supp. 2d 125, 129 (D.D.C. 2011) (supervisor asked "when are you going to retire?"); Shipman v. Vilsack, 692 F. Supp. 2d 113, 118 n.5 (D.D.C. 2010) (supervisor "talked with [plaintiff] about retirement").  By contrast, in cases where an employer's derogatory comments have been found sufficient to defeat summary judgment, the comment is both disparaging and directly related to age.  See Robinson v. Red Coats, Inc., 31 F. Supp. 3d 201, 216 (D.D.C. 2014) (denying summary judgment on age discrimination claim where supervisor told employee "maybe [she is] too old to work" on night she was fired); Daniels v. Tapella, 571 F. Supp. 2d 137, 144 (D.D.C. 2008) (supervisor stated that employee's work group "would be a lot better off as soon as he got rid of these old people"); Threadgill v. Spellings, 377 F. Supp. 2d 158, 164–65 (D.D.C. 2005) (manager frequently commented that certain

employees were "over the hill").  The rest of the comments—Dr. Mitchell's alleged failure to follow through on her assurance to rectify the negative review and her reference to Johnson's creative choice of signature blocks—do not even arguably regard Johnson's age, let alone reveal discriminatory animus.

3.      <u>Shifting Rationales</u>

Johnson alleges that the District has changed its position on who replaced Johnson, which he claims demonstrates pretext.  He compares the District's discovery responses disputing whether Johnson was replaced, Pl. (Johnson) Ex. 74 at 1–6, 15, 19, with its motion for summary judgment, where it contends that Johnson was replaced at the two schools in which he worked by 67 year old and 59 year old psychologists, respectively.  Mot. at 9.  Johnson himself posits a third possibility: that he was actually replaced by Kimberly Williams, a then 33-year old psychologist who inherited Johnson's employee number.  Opp'n to Mot. (Johnson) at 14.

An employer's inconsistent justifications *for the adverse employment action at issue* can be probative of pretext in certain circumstances.  <u>See</u> <u>Sw. Merch. Corp. v. NLRB</u>, 53 F.3d 1334, 1344 (D.C. Cir. 1995) ("shifting testimony" from decision maker regarding why individuals were not selected for a vacancy evidenced pretext); <u>EEOC v. Sears Roebuck & Co.</u>, 243 F.3d 846, 852–53 (4th Cir. 2011) (noting that the "fact that Sears has offered different justifications at different times for its failure to hire [the employee] is, in and of itself, probative of pretext.").  But Johnson does not allege that anyone involved in the decision to terminate him offered inconsistent reasons for doing so.  DCPS has consistently maintained that Johnson was fired because he was rated "Minimally Effective" for two consecutive years.  That counsel for the District of Columbia may have made inconsistent representations years after Johnson was fired is largely irrelevant to the pretext inquiry.

B.   Dr. Oscar Harp

As with Johnson, DCPS disputes that Harp has made out a *prima facie* case of age discrimination, contending that he has failed to show that he was "disadvantaged in favor of a younger person." Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999). In response, Harp provides a document showing that the majority of school psychologists DCPS hired in the 2009–2010 through 2012–2013 school years were under 40. Pl. (Harp) Ex. 3. It is far from clear that this document meets Harp's burden to establish that he was replaced by a younger person. As DCPS notes, however, proof of a *prima facie* case is essentially "irrelevant when an employer has asserted a legitimate, non-discriminatory reason for its decision." Chisholm v. District of Columbia, 666 F. Supp. 2d 96, 113 (D.D.C. 209). The Court will assume for the purpose of this opinion that Harp has met his initial burden and proceed to determine whether DCPS has provided a legitimate, non-discriminatory reason for firing Harp.[1]

DCPS maintains that it fired Harp because he received an "Ineffective" rating for the 2009–2010 school year. Harp does not dispute that his evaluation scores resulted in an "Ineffective" rating or that this rating is grounds for termination under DCPS regulations. DCPS thus has met its burden to offer a legitimate, nondiscriminatory basis for terminating Harp. See, e.g., Chowdhury, 587 F. Supp. 2d at 264 ("Failure to meet the standard of work required by an employer is a facially legitimate basis for terminating an employee."). The Court will therefore proceed to ask whether Harp has established that DCPS used the IMPACT system as a pretext for firing him because of his age.

---

[1] DCPS also contends that the Court should treat its motion as conceded because Harp filed his opposition one day late and failed to file a statement of material facts in dispute in conformity with Local Rule of Civil Procedure 7(h). The Court declines to do so given the lack of prejudice to the defendant and will instead address the merits of the dispute. See Yesudian ex rel. United States v. Howard Univ., 270 F.3d 969, 971 (D.C. Cir. 2001). Counsel for Harp is admonished, however, to comply with the Court's rules.

Harp must demonstrate pretext by evidence that "attack[s] the employer's proffered explanation" or independently indicates discriminatory attitudes on the part of his employer. Holcomb, 433 F.3d at 897 (citing Aka, 156 F.3d at 1289). Harp makes myriad assertions disputing DCPS's proffered justification, the most relevant of which the Court will address.[2] At bottom, Harp contends that the IMPACT process was highly flawed overall, that procedural errors plagued his reviews, and that his supervisors actually terminated him because they disliked him.

Harp's general gripes about IMPACT—that it was allegedly a "flawed, subjective and contradictory" system and that DCPS hired "ill-trained" supervisors, Pl. (Harp) Opp'n at 2–3—do not establish pretext. Again, the Court does not "serve as a 'super-personnel department that reexamines an entity's business decisions,'" Holcomb, 433 F.3d at 897 (quoting Barbour, 181 F.3d at 1346), and a plaintiff cannot demonstrate that he was terminated because of discriminatory bias by proving that his termination was unfair. Fischbach, 86 F.3d at 1183. Simply showing that IMPACT was poorly designed or executed is not evidence that DCPS or Harp's supervisors singled him out for discriminatory treatment because of his age. Instead, Harp must demonstrate that the errors in his evaluations and scores were so obvious and substantive that they demonstrate bad faith. Id. at 1183 (procedural defect must show that "employer made an error too obvious to be unintentional"). Harp makes no effort to connect his allegations of general flaws in the IMPACT system with discriminatory bias.

Harp's allegations of specific errors in his own evaluations bring him no closer to proving pretext. He alleges that Turner-Wingate mistakenly scored his "summary reports"—meaning

---

[2]  Throughout Harp's opposition to summary judgment, his counsel makes factual assertions without citations to record evidence and cites to evidence that does not support the position asserted. The Court has not taken into consideration these representations, which constitute unsubstantiated argument by counsel. See Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) (conclusory assertions unsupported by evidence do not establish a genuine dispute of material fact).

reviews of independent evaluations of students—as full student assessments and failed to correct his score once she became aware of the error.  Pl. (Harp) Ex. 1 at 366:5–21.  Yet Turner-Wingate's evaluation explicitly distinguishes between student assessments and summary reports.  She gave him a low score because (1) he had been asked to provide full assessments for review, not summary reports, and (2) Harp's summary reports lacked required information under the rubric for reviews of independent evaluations.  Turner-Wingate explained:

> Dr. Harp clarified that these 'summary reports' are actually 'reviews of independent evaluations.'  Still, none of these 'summary reports' contain the elements indicated (per the operationalized rubric) for a standard review of an IEE report – which are an observation, a record review, documentation of student's [sic] present level of performance (PLOP – based on teacher interviews and/or reviewed documents), a summary and conclusion re: the IEE, including comments about it's [sic] merit, AND, lastly completion of the 'checklist' form.

Def. (Harp) Ex. 4 at DC001711.  The evaluation also indicates that necessary sections were missing from the full assessments Turner-Wingate reviewed and that Harp had failed to use required diagnostic tests on some students.  Id.  Similar deficiencies in Harp's reports are noted in his second evaluation, prepared by Dr. Ramona Rich.  See Def. (Harp) Ex. 5 at DC001723–25.  Because Harp has failed to show error in the substance of his evaluations, he has not created a dispute of material fact.

Harp also emphasizes the Office of Employment Appeals' finding that DCPS violated D.C. municipal regulations by allowing Rich to evaluate Harp without first having supervised him for at least 90 days.  Pl. (Harp) Ex. 2 at 21.  But while the Office of Employment Appeals reviewed whether DCPS had just cause to terminate Harp, this Court's inquiry concerns whether DCPS terminated him *because of his age*.  The relatively minor error that the office identified does not indicate that DCPS intentionally disregarded its procedures or otherwise did not "honestly believe in the reasons it offer[ed]" for terminating Harp.  Fischbach, 86 F.3d at 1183.

Finally, Harp contends that his supervisors actually fired him because they found him to be "belligerent and condescending or rude." Pl. (Harp) Opp'n at 2, 4. Harp provides no evidentiary support for this assertion. But even if true, it does not create an issue of material fact because it does not indicate that Harp was fired because of his age. See, e.g., Bryant v. Brownlee, 265 F. Supp. 2d 52, 64 (D.D.C. 2003) ("It goes without saying that plaintiff cannot state a claim with respect to her . . . supervisors' dislike of her where it is based on factors other than discriminatory animus" (citing Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002)). The Court therefore finds that Harp's evidence does not establish that DCPS used his IMPACT rating as a pretext for age discrimination.

### IV.   Conclusion

In sum, Johnson and Harp have failed to demonstrate that their IMPACT ratings were pretexts for age discrimination. At most, their evidence indicates that the IMPACT process was flawed and poorly executed. But they offer nothing to discredit DCPS's evidence that it "honestly believe[d] in the reasons it offer[ed]" for terminating them, Fischbach, 86 F.3d at 1183, nor do they provide contrary evidence that they were actually fired because of their age. Accordingly, the Court will grant DCPS's Motions for Summary Judgment as to both plaintiffs. The Court will issue an Order consistent with this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   April 17, 2015

17